Good morning. I'm Richard Sutch for Troy Thompson. I was planning to concentrate on the issues of the use of a semi-anonymous jury in which the jurors were referred to by numbers instead of their names throughout the jury selection proceedings and trial. And although the judge and the attorneys had a list of their names and the numbers, this list was not available to the defendants. The defendant was informed, as were the jurors, that the jurors were anonymous. The lawyer had a list of coordinating the jurors' numbers with their names, but the defendant, according to his declaration, was not allowed to see that list by his attorney. His attorney might have been willing to show it to him if he had asked for it, but the attorney doesn't recall that he did ask for it or that he did show it to him. So what's the problem? The problem was that the defendant did not – well, part of the problem is that the defendant... The defendant didn't ask if he wanted to know and thought it might be important that he could have asked and he didn't? The defendant didn't know that he could ask to see the list. We don't even know whether the defendant knew that there was a list. All he knew was what he was – the jurors were all referred to during the proceedings by name. The judge told me first. You mean by numbers. Of course, the defendant themselves, by numbers. And the judge informed the jurors and at the same time the defendant himself that the jurors would be referred to only by numbers and that they would be anonymous. What's the authority that says that you can't do that? Well, there is plenty of authority in decisions of the circuit courts of appeal that this procedure cannot be used except upon findings of a particularized necessity. And there are a number of cases that have upheld a procedure where the jurors were... What is the strongest case that the trial court should have known about federal case at the time that it used this procedure? Well, I don't think I can identify the strongest case. I've cited half a dozen different... This is a habeas petition, so there has to be clearly established law. Isn't it a habeas case? Yes, it is a habeas corpus case. And there are – there is no United States Supreme Court case directly on point, but we're relying on the violation of a number, six, seven or eight defendants' constitutional rights that are clearly established by the decisions of the United States Supreme Court, not only his right to due process, his right to the presumption of innocence. Did his lawyer object to this procedure? His lawyer didn't make an objection, probably because this is the routine procedure in the Sonoma County courts. I know of other cases in which objections have been made. They're routinely overruled, and so there's probably – that's probably why the lawyer didn't make the objection. But we do also have a contention that it was ineffective assistance of the appellant's attorney to fail to make such an objection because the procedure was detrimental to him, and there was obviously no benefit to the defendant in not knowing the names of the jurors. If your premise is correct, and if you're correct that this is standard procedure, that everybody who's been convicted in Sonoma County court has a right to a habeas relief. Well, there would be problems in that. The issue would have had to have been raised at some level in the State courts and exhausted there, and the statute of limitations would not yet have run, but it's the first level that this was raised. At what level was it? Yeah. Well, it has been raised, as I indicated in other cases in the trial court, by an attorney's objection. It has been raised in the – Oh, in this case. In this case, it was first raised in the California court of appeal. It was, again, raised on petition for review to the California Supreme Court, and I went through the same procedure again to – Could the California court of appeal hold? The California court of appeal upheld the procedure. I don't think that they addressed all of our constitutional arguments, and insofar as they did, they were mistaken. Basically, they brushed off this contention by saying that the defendant hasn't been able to show how he was adversely affected by not knowing the names of the jurors, but we made a motion in that court, as we did in the district court, for a transcript of the jury voir dire proceedings so that we would be able to show, for one thing, whether there were some jurors that expressed suspicion of the defendant because of the use of this anonymous procedure, whether they were prejudiced by the implication that there must be something dangerous about him or else. But how could there be the implication that you're suggesting when the court told the jurors why he was doing it? Doesn't the record show that? The record shows that the jurors told the jurors, you are anonymous because you have a right to be anonymous, which wasn't true. You have a right to privacy. I'm not suggesting what is fact or what otherwise, but this record shows that the judge told the jurors and it had nothing to do with the defendant. Nothing he said suggested it had anything to do with the defendant. Now, did I read it wrong? Well, I think you drew an implication from it that it might not have had to do anything with the defendant, but the judge, what the judge told the jury was, you're anonymous, you have a right to be anonymous under California law. Well, that was wrong. We do this to protect your privacy. I don't think the judge said that. He didn't say it, but he indicated that that's what it was being done for, for the jurors' privacy. We know from this record that there is, before the jurors are brought into the courtroom, there's a symbol in a jury services office, and there they're given a sort of an orientation by the jury services supervisor, and it's part of that orientation that they say one or the other or two things, that you're not to refer to yourselves by name but only by number. This is either for your protection of your privacy or for your protection. So we don't know exactly what happened in this case. We never had an opportunity to interview these jurors and find out what they were told, but we do know that in other proceedings they are told this is for your protection of your privacy or simply for your protection. There's no indication that standard Sonoma County practice wasn't followed here, right? The standard Sonoma County practice was followed so far as we know. But these jurors weren't born yesterday. Not all of them were born and raised under the Sonoma County system. Some of the jurors had been on trials in other counties. They knew what it was like in civil trials. They've seen trials on television. They know that jurors are referred to by name. So they must have figured something's up in this case. Why are we having to be referred to only by numbers in this case? There must be something about this defendant that would be a danger to us if he knew what our names are. Well, that's the – that's one of the evils. It's really challenging the entire practice across the board. I don't think I've fully – yes, but I don't think I've fully answered that. But you don't have anything in particular for this case that would necessitate it or any objection by the counsel, anything of record that would indicate that there was any special reason in this case. Is that correct? The California Court of Appeal, as well as the district court, more or less put the burden on us to show what happened in this particular case that would have biased your client. What did jurors serve in his case who, if he had known their names, he would have been able to ferret out.  I think it's important to note that we did have a motion for a jury hearing. We made a motion for an evidentiary hearing in the district court so that we would have an opportunity to obtain a transcript of the jury proceedings to see what effect it had on the jurors, and we would – and for a list of the names of the jurors so that we would be able to interview them and find out what effect it had on them, to see if there was some –        Thank you for your time, and thank you, Mr. Chairman, for your rebuttal. Thank you. Thank you. May it please the Court, Dane Gillett, Senior Assistant Attorney General for the respondent in this case, and I have just a couple of points to make. The first is that this case has been argued throughout in the California court, the district court, and in the briefs in this case as a challenge to the use of an anonymous jury. And we just heard this morning for the first time, I think, a more accurate characterization, if it's even relevant at all, and that is it's a semi-autonomous, excuse me, semi-anonymous jury. There is no doubt from the record that the jurors were identified on the record only, and in the court, only by the juror badge numbers. But it is also equally clear that the court and counsel had lists of the names of the jurors, and there is no doubt from the declaration of the attorney for the Petitioner in this case that had his client, Mr. Thompson, requested it, he would have shown him that list and allowed him to review the names and see if he recognized any, and Mr. Thompson never asked the question. The tragedy is we have to decide it on the record. There's nothing in this record that shows what he would have done if he had been asked. That's true. We just know he had it, he could have done it, and he wasn't asked. That is true, Your Honor. And that's the second record. That is true, Your Honor. The critical component here is that the jurors, excuse me, that the attorneys had the lists of names available to them. Right. And in cases where the attorneys never knew the names at all, truly anonymous juries, the courts have consistently found that that procedure was constitutional. And as I think was developed during some of the questions this morning, the critical flaw in the argument that counsel wants to make on behalf of Mr. Thompson is there is no United States Supreme Court precedent which compelled the State courts to find that this was an unconstitutional procedure. And, in fact, when directly asked, is there a case on point, and he said, no, there is no case directly on point. And it's that failure which I think under the AEDPA standard in 2254d-1 compels the Court to find that it was not objectively unreasonable for the State court to reach the decision that it did with respect to the procedure that was followed in this case in Sonoma County. There is one recent case that was cited to the Court in a letter from a petitioner I just want to mention because it does, it has changed the rule somewhat from the way we originally cited it, and that's Boyd v. Newland. We argued in support of the argument in our brief that Petitioner was not entitled to receive the complete Vordaer transcript. We relied on an earlier panel decision in Boyd in which this Court said that's not required under California law at all, citing the rule of court 6d. In the third amended version, the second amended, the third version of the Boyd decision, which was issued in, on October 26th of this year, the Court held that while the rule 6d is not unconstitutional and, in fact, is completely consistent with the requirement in Federal habeas proceedings that a petitioner, and in this case an appellant, must make a showing of the need for transcripts to get it, that in the Boyd case, an adequate need had, a showing had been made because the petitioner had made a colorable Batson violation claim, and in light of recent en banc authority from this Court that comparative analysis can take place on appeal, therefore, the petitioner had made a sufficient showing that he should get the entirety of the Vordaer transcript. The problem with Mr. Thompson's case is he's never made that showing. So Boyd does not support his position. It continues to uphold the constitutionality of the rule, but it says you have to make a showing, and no showing was made here. And I think that also came out during the questioning. There was never a showing or suggestion that trial counsel had any concerns about what happened during the jury Vordaer. And with respect to the question that was asked about was, what was the jury told, what admonishments did they receive, at page 143 of the excerpt of record, this is from the California Court of Appeal decision. The California Court of Appeal did augment the record to include the opening comments that were made by the trial court at the time, and the jurors were told that they were to refer to them, they would be referred to only by their numbers, that they were entitled to anonymity as a matter of law. Don't take offense. Don't take offense. That's State law. Unless the Court has any further questions, I'm prepared to submit at this time. Thank you, Your Honor. In the Boyd v. Newland case, I think that Mr. Thompson is entitled to a transcript of the Vordaer proceedings in order to make out his case. The courts, the Court of Appeal, the district court put the burden on Mr. Thompson to show us, if you had known the names of those jurors, which jurors would you have challenged, and why, and how. And how those jurors biased against you. We can't do that without the equipment that we need for that. And there is clearly established United States Supreme Court law that gives the defendant not only an equal protection, but a due process right to a complete record in order to present his first instance, his appeal to the State Court of Appeal and then to the district court. Present during Vordaer? He was present, but not able fully to participate because he didn't know the names of the jurors. Thank you. Thank you. The case has started. It's submitted for decision. We'll hear the next case on the calendar is United States v. Malik, which is submitted on the briefs, and it is so ordered. The next case for argument is Detlow v. Barnhart.
judges: Schroeder, Farris, Rawlinson